# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAJANAE KAMARI WILSON,<br>　　　　Plaintiff,<br><br>　　v.<br><br>KILOLO KIJAKAZI,<br>Acting Commissioner of Social Security,<br>　　　　Defendant.<br>_____/ | Case No. 1:22-cv-00425-SKO<br><br>ORDER ON PLAINTIFF'S SOCIAL SECURITY COMPLAINT<br><br>(Doc. 1) |

## I.    INTRODUCTION

Plaintiff Dajanae Kamari Wilson ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security (the "Commissioner" or "Defendant") denying her application for Supplemental Security Income ("SSI") under the Social Security Act (the "Act"). (Doc. 1.) The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Sheila K. Oberto, United States Magistrate Judge.[1]

## II.    FACTUAL BACKGROUND

Plaintiff protectively filed an application for SSI payments on August 27, 2018, alleging she became disabled on August 27, 2018, due a learning and intellectual disability. (Administrative Record ("AR") 27, 85–86, 98–100, 110–11, 119, 234.) Plaintiff was born on April 17, 2001, and

---

[1] The parties have consented to the jurisdiction of the U.S. Magistrate Judge. (*See* Doc. 9.)

was an adolescent on the application date. (AR 32, 53, 85, 98–99, 110, 234.) She reached the age of 18 on April 16, 2019, and has at least a high school education. (AR 32, 44, 55, 69.)

**A.    Relevant Medical Evidence[2]**

Plaintiff struggled with a learning disability while in school. In August 2014, a Wide Range Assessment of Memory and Learning, Second Edition (WRAML-2) test was administered to assess Plaintiff's memory and learning abilities. (AR 347.) Several of Plaintiff's skills were assessed in the low average range, including her overall short-term memory, her concentration to materials, and her ability to recognize previously presented material. (AR 347.) In 2017, Plaintiff underwent an academic skills assessment called the Wide Range Achievement Test 4 (WRAT-4). (AR 347.) Her scores as to word reading, sentence comprehension, spelling, math computation, and reading all fell within the lower extreme to below average ranges. (AR 347.)

An Individualized Education Plan (IEP) report prepared in March 2018 ("the 2018 IEP report") described how Plaintiff's difficulty with auditory processing, attention, and sensory motor skills impacted her progress in the areas of basic reading skills, reading comprehension, and math calculation. (AR 373.) Accordingly, Plaintiff required specialized academic instruction, and the 2018 IEP report noted that she would benefit from specific accommodations to help her access the curriculum and demonstrate knowledge at grade level standards, such as one-on-one instruction. (AR 373, 393.) The 2018 IEP report also indicated Plaintiff had been provided with multiple calendars and planners which were not being used. (AR 396–97.)

The 2018 IEP report further described how at the time, Plaintiff was only coming to school on Tuesdays and Thursdays and averaging one credit per month. (AR 384.) A supervising teacher gave Plaintiff homework each week, "but nothing comes back completed." (AR 384.) Plaintiff was able to engage in conversations appropriately with adults and peers, and she followed directions from educational staff and displayed positive behaviors. (AR 384.)

Another IEP report was prepared in September 2020, when Plaintiff was 19 years old ("the 2020 IEP report"). (AR 342.) The 2020 IEP report noted that Plaintiff "has been identified as having

---

[2] Because the parties are familiar with the medical evidence, it is summarized here only to the extent relevant to the contested issues.

a primary educational disability of Specific Learning Disability (SLD) associated with attention, auditory, and sensory motor skills processing deficits." (AR 342.)  The 2020 IEP report explained that these challenges affected Plaintiff across the curriculum, with the most noted challenges being in the areas of reading comprehension, basic reading skills, and math calculation.  (AR 342.) Accordingly, Plaintiff required specialized academic instruction, related services, and appropriate accommodations so she could make effective educational progress.  (AR 342.)

The 2020 IEP report described how Plaintiff's overall cognitive ability was estimated to be within the low average range.  (AR 347.)  Plaintiff struggled to calculate change, but she was able to complete calculations up to 5 dollars.  (AR 347, 354.)  The 2020 IEP report indicated Plaintiff is able to communicate her wants and needs verbally and she can follow directions.  (AR 347.)  She does laundry and helps with dishes and chores around the house, but she only cooks on the stove with assistance.  (AR 348.)

**B.     Administrative Proceedings**

The Commissioner denied Plaintiff's application for benefits initially on December 12, 2018, and again on reconsideration on March 4, 2019.  (AR 27, 96–98, 109–111, 119.)  Consequently, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  (AR 125–26, 141.)  The ALJ conducted a hearing on December 11, 2020.  (AR 51–80.)  Plaintiff appeared at the hearing with her mother and counsel and provided testimony.  (AR 65–70.)  Plaintiff's mother and a vocational expert ("VE") also testified at the hearing.  (AR 75–79.)

**1.     Plaintiff's Testimony**

Plaintiff testified that she is not currently employed, but she used to volunteer at the SPCA.  (AR 65–66.)  While she was in school, she had learning difficulties as to math and reading, and a teacher helped her on an individual basis.  (AR 66.)  Plaintiff stated she had no friends that she spent time with outside of the house, and she did not get along with her siblings.  (AR 67.)  According to Plaintiff, she can do household tasks like washing the dishes, taking a shower, and brushing her teeth, but she needs reminders from her mother to do so.  (AR 67.)  She testified that she is unable to go to the grocery store by herself, count money, pay bills, or drive, but she can make simple meals like eggs and bacon.  (AR 68–70.)

### 2. Plaintiff's Mother's Testimony

Plaintiff's mother testified that Plaintiff needs assistance and reminders when it comes to household chores like doing laundry. (AR 76.) She stated she provides Plaintiff with these reminders every day, between three to five times a day. (AR 76–77.) Plaintiff's mother described how Plaintiff's disability was an intellectual impairment because Plaintiff has trouble following directions and with comprehension, and she is easily distracted and "constantly" needs reminders. (AR 77.) Plaintiff's mother testified that she did not believe Plaintiff could live on her own. (AR 78.) She explained that she did not think Plaintiff would know how to handle an emergency if one were to arise, and she "needs help constantly." (AR 78.) Plaintiff's mother stated that Plaintiff can use the stove to cook breakfast, but when it comes to using the oven, her mother has to remind her how to use it and to turn it off. (AR 79.)

### 3. Vocational Expert's Testimony

The VE testified at the hearing that Plaintiff had no past work. (AR 72.) The ALJ asked the VE to consider a person of Plaintiff's age, education, and no past work history. (AR 72.) The VE was to assume that this individual could perform the full range of all exertional levels, but would be limited to simple and routine tasks not at a production rate, so the person could not do work that would have high production quotas which would need to be performed with strict deadlines, such as what might be expected on an assembly line. (AR 72.) The hypothetical individual could occasionally interact with coworkers, but not in a tandem team or group setting, and could occasionally interact with supervisors. (AR 72.) The individual could not do any work that would require interaction with the public. (AR 72.) The individual would also need to work in an environment that is fairly stable, meaning there would be few changes, if any, to the day-to-day work setting, tools, and work processes used to accomplish the work. (AR 72.) The VE testified that such a person could perform jobs in the national economy, such as production helper, Dictionary of Operational Titles (DOT) code 558.687-010, with a specific vocational preparation (SVP)[3] of 1 and

---

[3] Specific vocational preparation, as defined in DOT, App. C, is the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation. DOT, Appendix C – Components of the Definition Trailer, 1991 WL 688702 (1991). Jobs in the DOT are assigned SVP levels ranging from 1 (the lowest level – "short demonstration only") to 9 (the highest level – over 10 years of preparation). *Id.*

medium exertional level; tender-helper, DOT code 511.687-018, with an SVP of 1 and medium exertional level; and bottling line attendant, DOT code 920.697-042, with an SVP of 1 and light exertional level. (AR 73.) The VE testified that these three jobs would not require math skills other than basic counting, and they would not require any writing or reading. (AR 74.)

The ALJ asked the VE whether such jobs would be available if the hypothetical individual needed reminders three times a day, on a regular basis, from a supervisor throughout the day to stay on task. (AR 74.) The VE testified that such this limitation would not preclude employment and the three previously identified jobs would still be available. (AR 74.)

Plaintiff's attorney then asked the VE whether their opinion would change if the hypothetical individual needed reminders by a supervisor three times an hour to stay on task. (AR 75.) The VE stated that such a limitation would preclude the previously identified jobs. (AR 75.) The VE also testified that being off task for 25% of the workday due to cognitive issues and needing to take breaks is work preclusive. (AR 75.)

### III.     APPLICABLE LAW

Plaintiff's mother initiated this case as a childhood disability claim, but because Plaintiff reached the age of maturity during the pendency of the case, the ALJ considered Plaintiff's application for benefits under both the child and adult disability standards. (*See* AR 28–32, 55, 57, 111, 234.) The Court will set forth both standards below.

**A.     Childhood Disability Standard**

A child (defined as an individual under the age of eighteen) is considered disabled for purposes of disability benefits if they are unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987) (quoting 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A)); *Lowe v. Berryhill*, No. 1:17-cv-00349-SKO, 2018 WL 2096264, at *7 (E.D. Cal. May 7, 2018). The impairment or impairments must "result[] in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *Merrill ex rel. Merrill v. Apfel*, 224 F.3d 1083, 1085 (9th Cir. 2000) (quoting 42 U.S.C. § 1382c(a)(3)(C)(i)).

The ALJ must undertake a three-step sequential analysis in the process of evaluating a child's

1 disability. In the first step, the ALJ must determine whether the child is engaged in substantial 2 gainful activity. 20 C.F.R. § 416.924. If not, in the second step, the ALJ must determine whether 3 the child has a severe impairment or a combination of impairments causing marked functional 4 limitations. *Id*. If so, in the third step, the ALJ must determine whether the child has a severe 5 impairment or combination of impairments that meets or equals the requirements of the Listing of 6 Impairments ("Listing"), 20 C.F.R. 404, Subpart P, App. 1. *Id*. If so, the child is found to be 7 disabled, assuming the twelve-month duration requirement is also met. *Id*.

8 Step three encompasses two analytical steps. First, it must be determined whether the 9 claimant's impairment meets or medically equals a Listing. Second, the impairment must also 10 satisfy all the criteria of the Listing. 20 C.F.R. § 416.925(d). The mere diagnosis of an impairment 11 in the Listing is insufficient, without more, to sustain a finding of disability. *Young v. Sullivan*, 911 12 F.2d 180, 183 (9th Cir. 1990); *Key v. Heckler*, 754 F.2d 1545, 1549 (9th Cir. 1985). If the claimant 13 does not meet or medically equal a Listing, they may still be considered disabled if an impairment 14 results in limitations that "functionally equal the listings." 20 C.F.R. § 416.926a(a).

15 In determining whether the severe impairment functionally equals a Listing, the ALJ must 16 assess the claimant's functioning in six "domains." The "domains" are broad areas of functioning 17 that are "intended to capture all of what a child can or cannot do." 20 C.F.R. § 416.926a(b)(1). The 18 six domains are: (1) acquiring and using information; (2) attending and completing tasks; 19 (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for 20 yourself; and (6) health and physical well-being. *Id*. To "functionally equal" the listings, the 21 impairment must result in "marked" limitations in two domains or an "extreme" limitation in one 22 domain. *Id*., § 416.926a(a), (d). In making this assessment, the ALJ looks at "how appropriately, 23 effectively, and independently" the claimant preforms their activities "compared to the performance 24 of other children [the claimant's] age who do not have impairments." *Id*., § 416.926a(b). In each 25 domain, the regulations provide "age group descriptors" summarizing the typical functioning of 26 children in each group. The age groups include preschool children (age 3 to attainment of age 6), 27 school-age children (age 6 to attainment of age 12), and adolescents (age 12 to attainment of age 28 18). *See, e.g.*, *id*., § 416.926a(h).

A minor has a "marked" limitation in a domain if their impairment "interferes seriously" with their "ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2)(i). The regulations also provide that "marked" limitations means a limitation that is "more than moderate" but "less than extreme." *Id*. However, "extreme" limitation does not mean a "total lack or loss of ability to function." 20 C.F.R. § 416.926a(e)(3)(i).

The claimant bears the burden of establishing a *prima facie* case of disability. *Roberts v. Shalala*, 66 F.3d 179, 182 (9th Cir. 1995); *see* 20 C.F.R. § 416.912(a) ("In general, you have to prove to us that you are blind or disabled"). This burden requires a showing that the minor has an impairment listed in the regulations, and that they have met the duration requirement. *See* 20 C.F.R. § 416.924(a), 416.924(d)(2).

**B.      Adult Disability Standard**

An individual is considered "disabled" for purposes of disability benefits if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). However, "[a]n individual shall be determined to be under a disability only if [their] physical or mental impairment or impairments are of such severity that he is not only unable to do [their] previous work but cannot, considering [their] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 423(d)(2)(A).

"The Social Security Regulations set out a five-step sequential process for determining whether a claimant is disabled within the meaning of the Social Security Act." *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 20 C.F.R. § 404.1520). The Ninth Circuit has provided the following description of the sequential evaluation analysis:

> In step one, the ALJ determines whether a claimant is currently engaged in substantial gainful activity. If so, the claimant is not disabled. If not, the ALJ proceeds to step two and evaluates whether the claimant has a medically severe impairment or combination of impairments. If not, the claimant is not disabled. If so, the ALJ proceeds to step three and considers whether the impairment or combination of impairments meets or equals a listed impairment under 20 C.F.R. pt. 404, subpt. P, [a]pp. 1. If so, the claimant is automatically presumed disabled. If not, the ALJ proceeds to step four and assesses whether the claimant is capable of performing

[their] past relevant work. If so, the claimant is not disabled. If not, the ALJ proceeds to step five and examines whether the claimant has the [RFC] . . . to perform any other substantial gainful activity in the national economy. If so, the claimant is not disabled. If not, the claimant is disabled.

*Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). "If a claimant is found to be 'disabled' or 'not disabled' at any step in the sequence, there is no need to consider subsequent steps." *Tackett*, 180 F.3d at 1098 (citing 20 C.F.R. § 404.1520).

"The claimant carries the initial burden of proving a disability in steps one through four of the analysis." *Burch*, 400 F.3d at 679 (citing *Swenson v. Sullivan*, 876 F.2d 683, 687 (9th Cir. 1989)). "However, if a claimant establishes an inability to continue [their] past work, the burden shifts to the Commissioner in step five to show that the claimant can perform other substantial gainful work." *Id.* (citing *Swenson*, 876 F.2d at 687).

## IV.    THE ALJ'S DECISION

### A.    Childhood Disability Analysis

In a decision dated March 31, 2021, the ALJ found that Plaintiff was not disabled. (AR 27–45.) The ALJ first conducted the three-step childhood disability analysis set forth in 20 C.F.R. § 416.924. (AR 32–42.) The ALJ noted that Plaintiff was "an adolescent" on August 27, 2018, the date the application was filed, she attained the age of 18 on April 16, 2019, and she had not engaged in substantial gainful activity since the application date (step one). (AR 32.) At step two, the ALJ found that prior to attaining the age of 18, Plaintiff had the severe impairment of learning/intellectual disorder. (AR 32.) The ALJ further found that prior to attaining the age of 18, Plaintiff had no impairment or combination of impairments that met, medically equaled, or functionally equaled the severity of the Listings, in that they resulted in either marked limitations in two domains of functioning or extreme limitation in one domain of functioning (step three). (AR 32–34.)

In reaching this finding, the ALJ considered the relevant medical evidence and opinions, the hearing testimony, and school records. (*See* AR 32–42.) Although the ALJ recognized that Plaintiff's impairments "could reasonably be expected to produce the alleged symptoms[,]" they rejected the subjective testimony in the record as "not entirely consistent with the medical evidence and other evidence in the record." (AR 35.) The ALJ also found the opinions of the state agency

examiners "partially persuasive." (AR 36.) The ALJ analyzed Plaintiff's functioning "[i]n terms of six functional equivalence domains," including (1) acquiring and using information, (2) attending and completing tasks, (3) interacting and relating with others, (4) moving about and manipulating objects, (5) caring for herself, and (6) health and physical well-being. (AR 37–42.) The ALJ concluded that Plaintiff was not disabled. (AR 42.)

**B.     Adult Disability Analysis**

The ALJ then conducted the five-step adult disability analysis set forth in 20 C.F.R. § 404.1520. (AR 42–45.) The ALJ had previously found that Plaintiff had not engaged in substantial gainful activity since August 27, 2018, the application date (step one). (AR 32.) At step two, the ALJ found that since attaining age 18, Plaintiff continued to have a severe impairment of learning/intellectual disorder, and she had not developed any new impairments. (AR 42.) Since turning 18, Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in the Listing (step three). (AR 42.)

The ALJ then assessed Plaintiff's residual functional capacity ("RFC") and applied the assessment at steps four and five. *See* 20 C.F.R. § 416.920(a)(4) ("Before we go from step three to step four, we assess your residual functional capacity . . . . We use this residual functional capacity assessment at both step four and step five when we evaluate your claim at these steps."). The ALJ determined that since turning 18, Plaintiff had the RFC:

> to perform a full range of work at all exertional levels. Mentally, [Plaintiff] can perform simple and routine tasks. She cannot perform work that requires high production quotas that need to be performed within strict time deadlines, such as assembly line work. [Plaintiff] can occasionally interact with coworkers but not in a team, group, or tandem setting. She can occasionally interact with supervisors. She cannot perform work that requires public interaction as part of the job duties. In addition, [Plaintiff] requires a stable work environment, defined as having few changes in the day-to-day work setting or in the tools and work processes used to accomplish the work.

(AR 42.) Although the ALJ recognized that Plaintiff's impairment "could reasonably be expected to cause the alleged symptoms[,]" the ALJ rejected Plaintiff's and her mother's statements as "not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (AR 43.)

The ALJ determined that Plaintiff had no past relevant work (step four), but considering Plaintiff's age, education, work experience, and RFC, Plaintiff could perform a significant number of jobs in the national economy, specifically production helper, tender helper, and bottling line attendant (step five).  (AR 44–45.)  The ALJ concluded Plaintiff was not disabled since August 27, 2018, the application date.  (AR 45.)

Plaintiff sought review of this decision before the Appeals Council, which denied review on October 5, 2021.  (AR 5–10.)  Therefore, the ALJ's decision became the final decision of the Commissioner.  20 C.F.R. § 416.1481.

## V.       SCOPE OF REVIEW

The ALJ's decision denying benefits "will be disturbed only if that decision is not supported by substantial evidence or it is based upon legal error."  *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1998).  In reviewing the Commissioner's decision, the Court may not substitute its judgment for that of the Commissioner.  *Macri v. Chater*, 93 F.3d 540, 543 (9th Cir. 1996).  Instead, the Court must determine whether the Commissioner applied the proper legal standards and whether substantial evidence exists in the record to support the Commissioner's findings.  *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007).  "Substantial evidence is more than a mere scintilla but less than a preponderance."  *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008).

"Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. of N.Y. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).  The Court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence."  *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (citation and internal quotation marks omitted).

## VI.       DISCUSSION

Plaintiff contends, *inter alia*, that the ALJ failed to articulate clear and convincing reasons for discounting her statements regarding her subjective complaints.  (Doc. 21 at 16–21; Doc. 24 at 3–4.)  The Acting Commissioner responds that the ALJ properly relied on evidence in the record that

undermined the credibility of Plaintiff's allegations of disabling symptoms and limitations. (Doc. 23 at 12–15.) The Court agrees with Plaintiff that the ALJ erred in the evaluation of Plaintiff's testimony and will remand the case on that basis.

**A.  The ALJ Failed to Articulate "Specific, Clear and Convincing Reasons" to Discredit Plaintiff's Subjective Complaints**

**1.  Legal Standard**

"In evaluating the credibility of a claimant's testimony regarding subjective pain, an ALJ must engage in a two-step analysis." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Id*. "The claimant is not required to show that her impairment 'could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom.'" *Id*. If the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if the ALJ gives "'specific, clear and convincing reasons'" for the rejection.[4] *Id*.

As the Ninth Circuit has explained:

> The ALJ may consider many factors in weighing a claimant's credibility, including (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities. If the ALJ's finding is supported by substantial evidence, the court may not engage in second-guessing.

*Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (citations and internal quotation marks omitted); *see also Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1226–27 (9th Cir. 2009) ("If an ALJ finds a claimant's characterization of his or her own symptoms unreliable, the ALJ must make a credibility determination backed up by specific findings."). Other factors the ALJ may

---

[4] To preserve its position for any potential appeal, the Acting Commissioner contends that the "clear and convincing reasons" standard is inconsistent with the substantial evidence standard under 42 U.S.C. § 405(g). (*See* Doc. 23 at 12 n.4.) As the Acting Commissioner acknowledges, however, this Court is bound by Ninth Circuit precedent. (*Id*.) In any event, the Court rejects the Acting Commissioner's contention that a lesser standard of review applies.

consider include a claimant's work record and testimony from physicians and third parties "concerning the nature, severity, and effect of the symptoms of which he complains." *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).

The clear and convincing standard is "not an easy requirement to meet," as it is "the most demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)). "A finding that a claimant's testimony is not credible 'must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain.'" *Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015).

**2.   Analysis**

Here, in both the childhood and adult disability analyses, the ALJ found that Plaintiff's "medically determinable impairment could reasonably be expected to cause the alleged symptoms." (AR 35, 43.)  The ALJ further determined that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms [were] not entirely consistent with the medical evidence and other evidence in the record." (*Id.*)  Accordingly, the relevant inquiry before the Court is whether the ALJ provided "specific, clear and convincing reasons" in making the non-credibility determination. *Vasquez*, 572 F.3d at 591; *see, e.g.*, *Brown-Hunter*, 806 F.3d at 492–93 ("Where . . . the ALJ concludes that a claimant is not malingering, and that she has provided objective medical evidence of an underlying impairment which might reasonably produce the pain or other symptoms alleged, the ALJ may 'reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'").

As the Ninth Circuit in *Brown-Hunter* stated:

> We hold that an ALJ does not provide specific, clear, and convincing reasons for rejecting a claimant's testimony by simply reciting the medical evidence in support of his or her [RFC] determination.  To ensure that our review of the ALJ's credibility determination is meaningful, and that the claimant's testimony is not rejected arbitrarily, we require the ALJ to specify which testimony she finds not credible, and then provide clear and convincing reasons, supported by evidence in the record, to support that credibility determination.

*Brown-Hunter*, 806 F.3d at 489.  Thus, "[g]eneral findings" are not enough to satisfy the clear and

12

convincing standard. *Id*. at 493. "[R]ather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id*. Failure to do so constitutes legal error. *Id*. at 494.

As part of the childhood disability analysis, the ALJ evaluated Plaintiff's statements as follows:

> [Plaintiff] alleged disability based on learning and intellectual disability (Exhibit B4E/2). She testified that she had problems with math and reading and required one-on-one instruction from instructors. She testified that she is not currently employed. She performed volunteer work with the SPCA but was unable to specify when the work took place or how long she performed the position. She testified that she did not have friends outside the house and did not get along with her siblings. She required reminders to perform household chores and perform personal care. [Plaintiff] testified that she cannot go shopping by herself and cannot make change at the store. She does not drive.

(AR 35.) The ALJ then discussed the medical evidence that formed the basis for the childhood nondisability finding. (AR 35–42.)

As a part of the adult disability analysis, the ALJ noted their finding that Plaintiff's and her mother's "assertions [were] partially persuasive." (AR 43.) After briefly summarizing some of the medical evidence, the ALJ stated as follows:

> I find [Plaintiff's] and her mother's assertions persuasive but only to the extent consistent with the limitations identified above. [Plaintiff's] record shows that [she] has been successful with IEP services. She is able to perform most activities of daily living independently or with prompting. [Plaintiff's] medical records reflect no significant physical problems.

(AR 43.)

The foregoing is the entire subjective symptom discussion, and it is insufficient. The ALJ does not specify which of Plaintiff's statements they found to be less than credible and why the only three identified pieces of medical evidence (that Plaintiff's record shows success with IEP services, her ability to perform most activities of daily living independently or with prompting, and no significant physical problems) undermine that testimony. To the contrary, on multiple occasions, the ALJ acknowledges that they found Plaintiff's and her mother's statements to be persuasive. (*See* AR 43.) Indeed, the ALJ's analysis indicates that they found Plaintiff's testimony regarding her impairments to be at least partially credible. (*Compare* AR 35 (Plaintiff testified that she "required reminders to perform household chores and perform personal care.") *with* AR 43 (the ALJ found that

13

Plaintiff "is able to perform most activities of daily living independently or with prompting.").)

It is unclear to the Court which of Plaintiff's statements regarding her impairments that the ALJ found to be less than credible. For example, it is not apparent why Plaintiff's success with IEP services bears any relation to her problems with math and reading. (AR 35, 43.) Such a nexus is required because, without that specification, the Court is left to speculate as to which statements the ALJ intended to discount and how they are undermined by the evidence—which the Court may not do. *See Brown-Hunter*, 806 F.3d 494–95 ("We cannot review whether the ALJ provided specific, clear and convincing reasons for rejecting [the claimant]'s pain testimony where, as here, the ALJ never identified *which* testimony she found not credible, and never explained *which* evidence contradicted that testimony . . . . In sum, 'we cannot substitute our conclusions for the ALJ's, or speculate as to the grounds for the ALJ's conclusions.'") (emphasis in original). Similarly, the ALJ describes finding "[Plaintiff's] and her mother's assertions persuasive but only to the extent consistent with the limitations identified above." (AR 43.) However, this general finding of an unspecified conflict between Plaintiff's statements and the ALJ's determinations as to her limitations is inadequate, and again leaves the Court in a position to speculate as to which limitations the ALJ is referring. *See also Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014) (explaining that the Court may not "take a general finding—an unspecified conflict between [c]laimant's testimony . . . and her reports to doctors—and comb the administrative record to find specific conflicts."). While the Ninth Circuit does not "require ALJs to perform a line-by-line exegesis of the claimant's testimony, nor do they require ALJs to draft dissertations when denying benefits," the ALJ must do more than what was done here, which consisted of finding Plaintiff's assertions to be persuasive, but rejecting unspecified parts of her statements without explanation. *Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020).

The Acting Commissioner points to statements made by the ALJ in the summation of the medical evidence supporting the RFC determination, and contends the ALJ provided clear and convincing reasons for discounting Plaintiff's testimony. (*See* Doc. 23 at 13–15.) The Ninth Circuit has explained, however, that "summariz[ing] the medical evidence supporting [the] RFC determination . . . is not the sort of explanation or the kind of 'specific reasons' [the Court] must have in order to . . . ensure that the claimant's testimony was not arbitrarily discredited." *See, e.g.,*

14

*Brown-Hunter*, 806 F.3d at 494. Thus, "the observations an ALJ makes as part of the summary of the medical record are <u>not</u> sufficient to establish clear and convincing reasons for rejecting a Plaintiff's credibility. Instead, the ALJ must <u>link</u> the medical evidence at issue to the Plaintiff's testimony." *Argueta v. Colvin*, No. 1:15–cv–01110–SKO, 2016 WL 4138577, at *13 (E.D. Cal. Aug. 3, 2016) (citations omitted, emphasis in the original).

As set forth above, the ALJ did not specifically identify which portions of Plaintiff's testimony conflicted with the parts of the record they noted and how. Because this Court's review is limited to the rationale provided by the ALJ, the *post-hoc* rationalizations and inferences advanced by the Acting Commissioner cannot justify the ALJ's rejection of Plaintiff's subjective testimony. *See Bray*, 554 F.3d at 1225 ("Long-standing principles of administrative law require [the Court] to review the ALJ's decision based on the reasoning and factual findings offered by the ALJ—not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking."); *Ceguerra v. Sec'y of Health & Human Servs.*, 933 F.2d 735, 738 (9th Cir. 1991) ("A reviewing court can evaluate an agency's decision only on the grounds articulated by the agency.").

**B.    The ALJ's Error Was Not Harmless**

The Court now turns to the analysis of whether this error by the ALJ was harmless. The Ninth Circuit "ha[s] long recognized that harmless error principles apply in the Social Security Act context." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (citing *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006)); *see also Garcia v. Comm'r of Soc. Sec.*, 768 F.3d 925, 932 n.10 (9th Cir. 2014) (stating that the harmless error analysis applies where the ALJ errs by not discharging their duty to develop the record). As such, the Court "will not reverse an ALJ's decision for harmless error." *Tommasetti*, 533 F.3d at 1038 (citing *Robbins*, 466 F.3d at 885).

An error is harmless "where it is inconsequential to the ultimate nondisability determination." *Molina*, 674 F.3d at 1115 (citations omitted); *see also Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014) (stating that an error is also harmless "'if the agency's path may reasonably be discerned,' even if the agency 'explains its decision with less than ideal clarity'") (quoting *Alaska Dep't of Envtl. Conservation v. EPA*, 540 U.S. 461, 497 (2004)). "In other words, in each case [courts] look at the record as a whole to determine whether the error

alters the outcome of the case." *Molina*, 674 F.3d at 1115. "The nature of [the] application" of the "harmless error analysis to social security cases" is "fact-intensive—'no presumptions operate' and '[courts] must analyze harmlessness in light of the circumstances of the case.'" *March v. Colvin*, 792 F.3d 1170, 1172 (9th Cir. 2015) (quoting *Molina*, 674 F.3d at 1121). "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009).

The record establishes that the ALJ's error was not harmless. If the ALJ had credited Plaintiff's statements regarding her mental functional abilities and included appropriate limitations in the RFC, the disability determination may have changed, especially given that Plaintiff alleged fairly significant limitations, including an inability to do household tasks without reminders, go to the grocery store by herself, count money, pay bills, or drive. (AR 67–70; *see also* AR 75 (VE's testimony that needing reminders by a supervisor three times an hour to stay on task would preclude the three previously identified jobs, and being off task for 25% of the workday due to cognitive issues and needing to take breaks is work preclusive).) Thus, the error was not "inconsequential to the ultimate nondisability determination," *Molina*, 674 F.3d at 1115, and was not harmless.

**C.    The ALJ's Error Warrants Remand for Further Proceedings**

Where the ALJ commits an error and that error is not harmless, the "ordinary . . . rule" is "to remand to the agency for additional investigation or explanation." *Treichler*, 775 F.3d at 1099 (citations omitted). The Ninth Circuit recognized a limited exception to this typical course where courts "remand[] for an award of benefits instead of further proceedings." *Id.* at 1100 (citations omitted); *see also id.* (noting that this exception is "sometimes referred to as the 'credit-as-true' rule"). In determining whether to apply this exception to the "ordinary remand rule," the Court must determine, in part, whether (1) the record has been fully developed; (2) there are outstanding issues that must be resolved before a determination of disability can be made; and (3) further administrative proceedings would be useful. *Id.* at 1101 (citations omitted). As to the last inquiry, additional "[a]dministrative proceedings are generally useful where the record has not been fully developed, there is a need to resolve conflicts and ambiguities, or the presentation of further evidence . . . may well prove enlightening in light of the passage of time." *Id.* (citations omitted). Ultimately, "[t]he

16

decision whether to remand a case for additional evidence or simply to award benefits is in [the Court's] discretion." *Swenson*, 876 F.2d at 689 (citation omitted).

The Court finds that the "credit-as-true" exception to the "ordinary remand rule" is inapplicable in this case because additional administrative proceedings would be useful. If the ALJ changes their evaluation of Plaintiff's subjective complaints, any warranted additional limitations should be incorporated in the RFC. Conversely, there may be clear and convincing reasons the ALJ can offer for discounting Plaintiff's statements. *See Voisard v. Berryhill*, No. 2:17–cv–1023-EFB, 2018 WL 4488474, at *5 (E.D. Cal. Sept. 19, 2018) ("That the ALJ failed to provide sufficient reasons for discounting plaintiff's subjective testimony in this instance does not compel a finding that he is *unable* to do so.") (emphasis in original).

Even if the ALJ decides to credit as true some or all of Plaintiff's symptom statements and adjust their RFC determination for Plaintiff, the ALJ may still conclude that Plaintiff is not disabled because she has the RFC to perform the requirements of other work that exists in significant numbers in the national economy. The ALJ may also elect to further develop the record, if deemed necessary. Further proceedings would therefore be useful to allow the ALJ to resolve this "outstanding issue[ ]" before a proper disability determination can be made. *See Varney v. Sec'y of Health & Human Servs.*, 859 F.2d 1396, 1401 (9th Cir. 1988).

On remand, the ALJ should reevaluate Plaintiff's symptom testimony and address any necessary changes to the RFC determination. If the ALJ again discounts Plaintiff's subjective symptoms, they can then provide an adequate discussion of the specific testimony they are discounting and the specific evidence that contradicts that testimony. *See Payan v. Colvin*, 672 F. App'x 732, 733 (9th Cir. 2016). The ALJ must also reevaluate their conclusions at steps four and five of the disability determination in light of any changes to Plaintiff's RFC.

**D.    The Court Declines to Determine Plaintiff's Remaining Assertion of Error**

Having found that remand is warranted, the Court declines to address Plaintiff's remaining argument that the ALJ erred in failing to provide adequate reasons for invalidating the IQ testing administered during Plaintiff's psychological evaluation. *See Hiler v. Astrue*, 687 F.3d 1208, 1212 (9th Cir. 2012) ("Because we remand the case to the ALJ for the reasons stated, we decline to reach

[plaintiff's] alternative ground for remand."); *see also Newton v. Colvin*, No. 2:13–cv–2458–GEB–EFB, 2015 WL 1136477, at *6 n.4 (E.D. Cal. Mar. 12, 2015) ("As the matter must be remanded for further consideration of the medical evidence, the court declines to address plaintiff's remaining arguments."); *Augustine ex rel. Ramirez v. Astrue*, 536 F. Supp. 2d 1147, 1153 n.7 (C.D. Cal. 2008) ("[The] Court need not address the other claims plaintiff raises, none of which would provide plaintiff with any further relief than granted, and all of which can be addressed on remand.").

## I. CONCLUSION AND ORDER

Based on the foregoing, the Court finds that the ALJ's decision is not supported by substantial evidence and is, therefore, VACATED and the case REMANDED to the ALJ for further proceedings consistent with this Order. The Clerk of this Court is DIRECTED to enter judgment in favor of Plaintiff Dajanae Kamari Wilson and against Defendant Kilolo Kijakazi, Acting Commissioner of Social Security.

IT IS SO ORDERED.

Dated: **September 19, 2023**  /s/ *Sheila K. Oberto*
UNITED STATES MAGISTRATE JUDGE